[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-11322
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
NOVEMBER 1, 2011
JOHN LEY
CLERK

Agency No. A079-444-079

AUGUSTO ALFREDO ARNESEN CORTEZ,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

(November 1, 2011)

Before BARKETT, MARCUS, and WILSON, Circuit Judges.

PER CURIAM:

Augusto Cortez, a citizen of Venezuela, petitions for review of the Board of Immigration Appeals's (BIA) affirmation of the order of the Immigration Judge (IJ) that denied him (1) asylum, (2) withholding of removal, and (3) relief under The United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (CAT).  On appeal, Cortez first argues that the IJ and the BIA erred when they found that his application for asylum was untimely.  Second, he argues that the IJ violated his right to due process by excluding testimony related to his mother's political activities and persecution because it was relevant and probative evidence that would impact the decision in this case.  Third, he argues that successful asylum claim of his grandfather, the murder of his uncle, the flight of other relatives from Venezuela, the threats against his mother, and the indirect threats toward him through his mother and grandfather establish past persecution and a well-founded fear of future persecution on the protected ground of political opinion or imputed political opinion.  After reviewing the parties' briefs and the record, we affirm the decision of the BIA.

I.

On August 6, 2001, at the age of fourteen, Cortez entered the United States as a non-immigrant visitor for pleasure. He was authorized to remain until February 5, 2002, but he remained beyond that date without authorization. On November 14, 2008, the Department of Homeland Security (DHS), served Cortez with a Notice to Appear, charging him with removability under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), as an alien who has remained in the United States for a time longer than permitted.

Cortez did not apply for asylum when he initially arrived in the United States because he was fourteen and his mother married an American citizen, who filed a petition on behalf of Cortez and his mother. That petition was denied in 2007. In 2008 Cortez married an American citizen and filed an I-130 form, but he and his wife divorced in 2009 and he withdrew the petition.

In January 2010, Cortez filed an application for asylum, withholding of removal, and CAT relief based on his political opinions. He alleged that Chavista organizations supporting Venezuelan President Hugo Chavez persecuted his family for their opposition to the regime. He described how his grandfather and mother received threatening phone calls, and had repeated assassination attempts against them. He also explained how his uncle was murdered, possibly for the uncle's political activity.

3

During his hearing, Cortez attempted to testify regarding his mother's experiences, but the government objected to speculation and the IJ sustained the objection. The IJ noted that Cortez's mother was the best witness and she was available to testify, but chose not to testify on her son's behalf.

## II.

We review our jurisdiction *de novo*. *Gonzalez-Oropeza v. U.S. Att'y Gen.*, 321 F.3d 1331, 1332 (11th Cir. 2003). An alien may apply for asylum if he "demonstrates by clear and convincing evidence that the application has been filed within 1 year after the date of the alien's arrival in the United States." INA § 208(a)(2)(B), 8 U.S.C. § 1158(a)(2)(B). The INA provides that "[n]o court shall have jurisdiction to review any determination of the Attorney General under paragraph (2)." INA § 208(a)(3), 8 U.S.C. § 1158(a)(3) (including determinations regarding time limits for filing an application for asylum). Furthermore, we have held that INA § 208(a)(3), 8 U.S.C. § 1158(a)(3) eliminates appellate jurisdiction. *See Sanchez-Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1231 (11th Cir. 2001); *Chacon-Botero v. U.S. Att'y Gen.*, 427 F.3d 954, 957 (11th Cir. 2005) (holding that REAL ID Act of 2005 did not undermine the conclusion that federal appeals courts lack jurisdiction to review timeliness determinations under INA §

208(a)(2), 8 U.S.C. § 1158(a)(2)).  Because INA § 208(a)(3), 8 U.S.C. §

1158(a)(3) divests us of jurisdiction to review the determination that an asylum

applicant filed an untimely application, we lack jurisdiction to review the BIA's

timeliness determination.  Accordingly, we dismiss his petition for review of his

claim for asylum.

III.

When appropriate, we will review *de novo* constitutional challenges to

decisions of the BIA.  *Contreras-Rodriguez v. U.S. Att'y Gen.*, 462 F.3d 1314,

1316 (11th Cir. 2006).  However, a court may not review a final order of removal

unless "the alien has exhausted all administrative remedies available to the alien as

of right."  INA § 242(d)(1), 8 U.S.C. § 1252(d)(1).  This requirement is

jurisdictional and bars review of claims not raised before the BIA.

*Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006).

Due process requires that aliens be given notice and an opportunity to be

heard in their removal proceedings.  *Resendiz-Alcaraz v. U.S. Att'y Gen.*, 383 F.3d

1262, 1272 (11th Cir. 2004).  "In order to establish a due process violation, an

alien must show that he or she was deprived of liberty without due process of law,

and that the asserted error caused him substantial prejudice."  *Garcia v. Att'y Gen.*

*of U.S.*, 329 F.3d 1217, 1222 (11th Cir. 2003) (citations omitted).  An alien

5

asserting improper exclusion of evidence must show that the excluded evidence would have changed the outcome. *Ibrahim v. INS*, 821 F.2d 1547, 1550 (11th Cir. 1987).

An IJ may consider evidence in the form of "any oral or written statement that is material and relevant to any issue in the case previously made by the respondent or any other person." 8 C.F.R. § 1240.46(b). "Uncontradicted hearsay evidence is admissible in deportation proceedings if it is probative and its use is not fundamentally unfair so as to deprive petitioner of due process." *Tashnizi v. INS*, 585 F.2d 781,782–3 (5th Cir. 1978) (quotation omitted); *see also Galvez-Escobar v. U.S. Att'y Gen.*, 135 Fed. Appx. 287, 288 (11th Cir. 2005).

As an initial matter we note that Cortez's brief to the BIA is not in the record, but DHS's brief to the BIA references Cortez's brief. Thus, this court must assume that Cortez did file a brief to the BIA. However, it is unclear if Cortez properly argued due process to the BIA because neither DHS nor the BIA mentions this argument.

If Cortez did not brief the due process issue to the BIA, he has not exhausted his remedies; therefore, this court would not have jurisdiction over this issue. INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). However, due to the discrepancy in the record, we will assume *arguendo* that Cortez properly briefed the issue to

6

the BIA.  Even with this assumption, Cortez cannot prevail because he has not shown that the testimony regarding his mother's experiences in Venezuela would change the BIA's decision.  Both the BIA and the IJ required Cortez to show past persecution or possible future persecution to himself – not his mother.  Therefore, even if the testimony was not double hearsay, it was not relevant to the issues at hand.

IV.

We affirm decisions of the BIA if they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole."  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1027 (11th Cir. 2004) (*en banc*).  Under the substantial evidence test, we view the record "in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision."  *Id.*  To reverse a factual finding by the BIA, we must find that "the record compels a reversal; the mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the administrative findings."  *Id.*  In a case where the BIA issues its own opinion, we review the BIA's decision.  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  To the extent that the BIA adopts the IJ's reasoning, we review the IJ's decision as well.  *Id.*

7

An alien seeking withholding of removal under the INA must show that his "life or freedom would be threatened in that country because of the alien's . . . . political opinion." INA § 241(b)(3)(A), 8 U.S.C. § 1231(b)(3)(A); *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1257 (11th Cir. 2006). The burden of proof for withholding of removal requires a showing that it is "more likely than not" that the alien will face persecution. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005).

To qualify for CAT relief, an alien must show "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal," and that such torture would be by or with the consent of a public official or person acting in an official capacity. *Sanchez Jimenez*, 492 F.3d at 1239 (quotation omitted).

The record shows that the decisions of the IJ and the BIA are supported by substantial evidence. Cortez admitted that he suffered no injuries and no direct threats when he lived in Venezuela. His grandfather testified that, although he and Cortez's mother were involved in politics, the family members who choose not to become involved in politics do not face harm in Venezuela. Since Cortez presented no evidence that he had ever personally campaigned against Venezuelan President Hugo Chavez or taken any other political stand, there was substantial

8

evidence for the IJ and BIA to assume that Cortez would not be harmed because of the political activities of his grandfather or mother. His belief that the persecutors of his mother and grandfather would pursue him after his ten year absence was based entirely on speculation. He presented no evidence that the Venezuelan government would want to torture him for any reason. The challenged decisions of the BIA and IJ were supported by substantial evidence; therefore, the decision of the BIA is affirmed.

**DISMISSED IN PART AND AFFIRMED IN PART.**